# SUNTRUST

## CORRESPONDENT LOAN PURCHASE AGREEMENT

This Correspondent Loan Purchase Agreement (together with all exhibits hereto, the "Agreement") is made and entered into effective as of **December 7, 2001** (the "Effective Date") by and between SunTrust Mortgage, Inc. ("Purchaser"), a Virginia corporation with its principal office at **901 Semmes Avenue, Richmond, Virginia 23224, and Najarian Loans, Inc, DBA RPM Wholesale.** ("Seller"), a **California Corporation** with its principal office at **3201 Danville Boulevard, Suite 195, Alamo, CA 94507** with reference to the following facts:

A.     Seller desires to sell to Purchaser on a servicing released basis certain residential Mortgage Loans (as defined below) as set forth in the Manual (as defined below), and Purchaser wishes to purchase such Mortgage Loans.

B.     Purchaser and Seller desire to set forth in this Agreement the terms and conditions under which Mortgage Loans will be sold by Seller to Purchaser.

In consideration of the mutual promises and covenants contained herein, Purchaser and Seller agree as follows:

1.     **Purchase and Sale.**  Seller agrees to sell Mortgage Loans to Purchaser, and Purchaser agrees to purchase Mortgage Loans from Seller, in accordance with and subject to the terms and conditions of this Agreement.

2.     **Definitions.**  As used in this Agreement, the following definitions shall apply.  Certain other terms are defined elsewhere in this Agreement.  Any terms not defined in this Agreement but defined in the Manual shall have the meanings set forth in the Manual.

2.1.     **"Automated Underwriting System" or "AUS"** means a system for the electronic evaluation of a loan's eligibility for sale to various investors in the secondary market.

2.2.     **"Bankruptcy Code"** means the Bankruptcy Reform Act of 1978, as amended, 11 U.S.C. § 1101 *et seq.*, as the same may be amended from time to time, and any similar successor statute that may be in effect from time to time, together with the rules and regulations promulgated thereunder.

2.3.     **"Borrower"** means the individual(s) obligated to repay a Mortgage Loan.


EXHIBIT
A

2.4.    **"Business Day"** means any day on which Purchaser is open to the public for substantially all of its business, which is normally every day other than (i) a Saturday or Sunday or (ii) any federal public holiday observed by Purchaser.

2.5.    **"Close," "Closed" or "Closing"** means the time when a Borrower signs a Note evidencing a Mortgage Loan and the Mortgage securing payment of such Note, or the time when the previously signed Note and Mortgage are delivered and become effective, sometimes referred to as "settlement" or "close of escrow," depending upon local practice in the jurisdiction in which the Secured Property is located.

2.6.    **"Closing Package"** shall have the same meaning as defined in the Manual.

2.7.    **"Communications"** shall have the meaning set forth in Section 24 of this Agreement.

2.8.    **"Confidential Information"** means any confidential or proprietary information of Purchaser that Seller receives pursuant to this Agreement or the Manual.

2.9.    **"Consumer Disclosures"** means all disclosures or notices required or customarily used by residential mortgage lenders to comply with all applicable federal, state and local laws, rules and regulations applicable to consumer credit transactions involving loans secured by residential real estate, including, without limitation, the Truth-In-Lending Act, the Real Estate Settlement Procedures Act of 1974, the Equal Credit Opportunity Act, the Fair Credit Reporting Act, the Home Mortgage Disclosure Act of 1975, the Fair Housing Act, the Homeowners Protection Act of 1998, the National Flood Insurance Act of 1968, the Flood Disaster Protection Act of 1973, and Title V of the Gramm-Leach-Bliley Act, all as amended, together with the rules and regulations promulgated thereunder.

2.10.    **"Conventional Mortgage Loan"** means a Mortgage Loan that is not a FHA/VA Mortgage Loan.

2.11.    **"Credit Package"** shall have the same meaning as defined in the Manual.

2.12.    **"Delegated Underwriting"** means an authorization of Seller to underwrite applications for Mortgage Loans for and on behalf of Purchaser in accordance with, and subject to the limitations of, this Agreement.

2.13.    **"Delinquent"** means that all or any part of the monthly installment of principal and interest due on a Note, or the Escrows or other amounts required to be paid under the terms of a Mortgage, is unpaid after the date any such amount is due.

2.14.    **"DeskTop Underwriter"** means the Fannie Mae DeskTop Underwriter AUS.

2

2.15. **"Escrows"** means all funds collected from the Borrower to pay expenses required to be paid pursuant to the Mortgage, including, without limitation, hazard insurance premiums, flood insurance premiums, mortgage insurance premiums, taxes, assessments, and ground rents; and any water, sewer and other governmental charges that, if not paid, may result in liens on the Secured Property with priority over the Mortgage Loan.

2.16. **"Event of Default"** shall have the meaning set forth in Section 21 of this Agreement.

2.17. **"FHA"** means the Federal Housing Administration, or any successor thereto.

2.18. **"FHA Approval"** means a commitment issued for FHA insurance of a Mortgage Loan.

2.19. **"FHA Loan Correspondent"** means a lender that Purchaser will sponsor as a FHA loan correspondent pursuant to FHA guidelines.

2.20. **"FHA Mortgage Loan"** means a Mortgage Loan insured by FHA, as evidenced by a mortgage insurance certificate issued by HUD.

2.21. **"FHA/VA Mortgage Loan"** means a FHA Mortgage Loan or a VA Mortgage Loan.

2.22. **"Freddie Mac"** means the Federal Home Loan Mortgage Corporation, or any successor thereto.

2.23. **"Freddie Mac/Fannie Mae Requirements"** mean the standards, requirements, representations and warranties established from time to time by Freddie Mac and Fannie Mae as set forth, without limitation, in the Freddie Mac Sellers' and Servicers' Guide, the Fannie Mae Selling Guide, or the Fannie Mae Servicing Guide, or other pronouncements of either or both of Freddie Mac or Fannie Mae.

2.24. **"Fannie Mae"** means the Federal National Mortgage Association, or any successor thereto.

2.25. **"GNMA"** means the Government National Mortgage Association, or any successor thereto.

2.26. **"GNMA Requirements"** means the requirements, representations and warranties established from time to time by GNMA with respect to Mortgage Loans eligible for inclusion in pools backing a GNMA Mortgage Backed Security, all as set forth in the GNMA Guide, or other pronouncements of GNMA.

2.27. **"HUD"** means the U.S. Department of Housing and Urban Development, or any successor thereto.

3

2.28.   **"Indemnitees"** shall have the meaning set forth in Section 22 of this Agreement.

2.29.   **"Loan Amount"** means the principal amount of a Mortgage Loan at the time of Closing.

2.30.   **"Loan Prospector"** means the Freddie Mac Loan Prospector AUS.

2.31.   **"Lock-In"** means an agreement between Seller and Purchaser establishing the Purchase Price and purchase terms for the purchase of a Mortgage Loan.

2.32.   **"Manual"** means Purchaser's STM Correspondent Seller Guide relating to Purchaser's Mortgage Loan programs, as the same may be modified or amended from time to time by Purchaser. Each reference to the Manual shall mean either or both of the Conventional Mortgage Loan and/or the FHA/VA Mortgage Loan portions of the Manual, as applicable. The Manual and any amendments or modifications thereto shall be provided in the manner described in Section 3.4 of this Agreement.

2.33.   **"Mortgage"** means the security instrument securing a Mortgage Loan with real property including, without limitation, a mortgage, a deed of trust, a deed to secure debt, a security deed or any other security instrument, together with all riders or amendments to such instrument.

2.34.   **"Mortgage Loan"** means any eligible residential real property secured loan product as set forth in the Manual and meeting all the requirements of this Agreement. The term Mortgage Loan encompasses all of Seller's right, title and interest in and to the Mortgage Loan, including, without limitation, the servicing rights, all Escrows, the Note, the Mortgage, all applicable insurance policies, and all other documentation and information collected by Seller in connection with the  Mortgage Loan.

2.35.   **"Note"** means the instrument evidencing the Borrower's promise to repay the Loan Amount, plus interest, of the Mortgage Loan, together with all riders or amendments to such instrument.

2.36.   **"Post Closing Documents"** shall have the same meaning as defined in the Manual.

2.37.   **"Prior Agreement"** means a correspondent loan purchase agreement, conventional loan purchase agreement, FHA/VA loan purchase and sale agreement, or similar agreement, including any applicable addenda thereto, in effect prior to the Effective Date between Seller and Purchaser, or any of their respective predecessor companies (including, without limitation, Crestar Mortgage Corporation or SunTrust Mortgage).

2.38.   **"Prior Approval"** means that the FHA Approval is issued directly by FHA or the VA Approval is issued directly by VA.

4

2.39.   **"Purchase Agreement Component"** means certain types of Mortgage Loan products that Seller may be eligible to sell to Purchaser and/or certain types of Mortgage Loan processes which Seller may be permitted to perform, all as more fully described in this Agreement.  A Purchase Agreement Component shall not include any amendment or modification of the Manual.

2.40.   **"Purchase Agreement Component Advice"** means a Communication from Purchaser advising Seller that the Purchase Agreement Component described in the Communication is applicable to Seller from and after the date stated in the Communication.

2.41.   **"Purchase Date"** means the date on which Purchaser remits funds to Seller or to Seller's warehouse lender for the purchase of a Mortgage Loan.

2.42.   **"Purchase Price"** means the price paid by Purchaser for a Mortgage Loan as determined in the Manual.

2.43.   **"Secured Property"** means the real property (or, if applicable, the leasehold interest in real property) and improvements thereon subject to the lien of the Mortgage securing a Mortgage Loan.

2.44.   **"Solvent"** means that (a) the present fair salable value of Seller's assets exceed the total amount of its liabilities; and (b) Seller is able to pay its debts as they become due; and (c) Seller does not have unreasonably small capital to carry on its business as theretofore operated and all businesses in which Seller is about to engage.

2.45.   **"Table Funding" or "Table Funded"** means a transaction in which Purchaser purchases a Mortgage Loan at the time of the Closing of the Mortgage Loan but prior to the delivery of the Closing Package for the Mortgage Loan to Purchaser.  In a Table Funding transaction, the funds that are required to fund the Mortgage Loan at Closing are provided via Purchaser's purchase of the Mortgage Loan at Closing.

2.46.   **"Termination of Purchase Agreement Component Advice"** means a Communication from Purchaser advising Seller that the Purchase Agreement Component described in the Communication is no longer applicable to Seller from and after the date stated in the Communication.

2.47.   **"Third Party"** means a person or entity other than Seller that is in the business of originating mortgage loans and that originates a Mortgage Loan and transfers it to Seller.

2.48.   **"VA"** means the Department of Veterans Affairs, or any successor thereto.

2.49.   **"VA Agent"** means a lender that Purchaser will sponsor as a VA agent pursuant to VA guidelines.

5

2.50.   **"VA Approval"** means a commitment issued for a VA guarantee of a Mortgage Loan.

2.51.   **"VA Mortgage Loan"** means a Mortgage Loan guaranteed by VA, as evidenced by a loan guaranty certificate issued by VA.

3.   **Operation of this Agreement.**

3.1.   **General.**  This Agreement sets forth the terms and conditions under which Seller will sell Mortgage Loans to Purchaser and Purchaser will purchase Mortgage Loans from Seller.  Except as provided in the Manual, no obligation is created by this Agreement for Seller to sell, or Purchaser to purchase, a particular amount of Mortgage Loans or any particular Mortgage Loan.

3.2.   **Non-Exclusivity.**  The sale of Mortgage Loans by Seller, and the purchase of Mortgage Loans by Purchaser, shall each be on a non-exclusive basis. Except as provided in the Manual, nothing in this Agreement precludes Seller from selling Mortgage Loans to, or Purchaser from purchasing Mortgage Loans from, any other person.

3.3.   **Purchase Agreement Components.**

3.3.1.   **General.**  This Agreement contains provisions for certain Purchase Agreement Components, some of which may apply to Seller and others of which may not apply to Seller.

3.3.2.   **Purchase Agreement Component Advices.**  A Purchase Agreement Component shall apply to Seller only if Purchaser has provided Seller with a Purchase Agreement Component Advice for that Purchase Agreement Component.  A Purchase Agreement Component which becomes applicable to Seller shall be effective on the date stated in the Purchase Agreement Component Advice for the Purchase Agreement Component.  Seller acknowledges that a Purchase Agreement Component shall not apply to Seller unless a Purchase Agreement Component Advice has been provided to Seller for that Purchase Agreement Component.

3.3.3.   **Termination of Purchase Agreement Component Advices.**  Purchaser, with or without cause, may terminate the applicability of any Purchase Agreement Component previously made applicable to Seller by providing a Termination of Purchase Agreement Component Advice to Seller, in which event the Purchase Agreement Component will become inapplicable to Seller from and after the date stated in the Termination of Purchase Agreement Component Advice.

3.3.4.   **Establishment of Additional Purchase Agreement Components After the Effective Date.**  Purchaser shall have the right to establish additional Purchase Agreement Components from time to time after the Effective Date by notifying Seller of the issuance of one or more addenda to this Agreement.  A Purchase Agreement Component described in such an addendum shall apply to Seller only if Purchaser provides Seller with a Purchase Agreement Component Advice for that

6

Purchase Agreement Component, as set forth in Section 3.3.2. of this Agreement.  Each such addendum is and shall be an amendment to and an indivisible part of this Agreement.

3.3.5.  **Purchase Agreement Components in Effect as of the Effective Date**.  As of the Effective Date, the parties agree that the Purchase Agreement Components described in Exhibit A to this Agreement (which Exhibit A is incorporated into and made a part of this Agreement) have been issued to Seller.  The description of a Purchase Agreement Component in Exhibit A shall constitute the issuance of a Purchase Agreement Component Advice for that Purchase Agreement Component.

3.3.6.  **Right of Seller to Reject Purchase Agreement Components After the Effective Date**.  Subject to the remaining provisions of this Section 3.3.6, Seller shall have the right to reject any Purchase Agreement Component, in whole but not in part, that is made applicable to Seller subsequent to the Effective Date by providing Purchaser with notice of the rejection within 10 calendar days following Seller's receipt of the Purchase Agreement Component Advice for the Purchase Agreement Component, in which event that Purchase Agreement Component shall not become applicable to Seller.  Notwithstanding the preceding sentence, Seller shall not have the right to reject any Purchase Agreement Component relating to (a) any requirement of federal, state or local laws, rules or regulations or (b) any requirement of VA, FHA, GNMA, Fannie Mae, Freddie Mac, or HUD.  No rejection of any Purchase Agreement Component shall preclude either party from exercising its right to terminate this Agreement without cause under Section 25 hereof.

3.4.  **The Manual.**  The Manual is incorporated herein by reference and shall be deemed to be an inseparable part of this Agreement.  All Mortgage Loans purchased pursuant to the Agreement shall be subject to the terms of the Manual and this Agreement.  In the event of any inconsistency between the provisions of the Manual and the provisions of this Agreement, the provisions of the Manual shall prevail over and supersede the inconsistent provisions of this Agreement.  Purchaser reserves the right to amend or modify the Manual (including, without limitation, by adding new provisions of the same or a different nature as the existing provisions of the Manual, or by deleting provisions of the Manual) in its sole discretion from time to time.  Purchaser shall, at its sole option, provide the original Manual and/or notice of any amendments or modifications to the Manual or any memoranda, bulletins or other information related to the Manual (a) in paper form by giving notice of the same to Seller pursuant to Section 24 of this Agreement or (b) by posting the same on an Internet web site designated from time to time by Purchaser.

3.5.  **Termination of Prior Agreements.**  All Prior Agreements are hereby terminated and superseded by this Agreement.  The termination of any such Prior Agreement shall not affect the vested rights of the parties thereunder.  Any provision of any Prior Agreement (including without limitation representations, warranties, covenants, indemnities and other obligations) which, under the terms of the Prior Agreement or

7

applicable law, would survive the termination of the Prior Agreement shall continue to survive the termination of such Prior Agreement.

3.6.    **Compliance Matters.**  All Mortgage Loans that Seller sells to Purchaser must comply with all applicable federal and state laws, rules, regulations, requirements and guidelines including, without limitation, the laws, rules and regulations described in Section 17.4 of this Agreement and the laws, rules, regulations, requirements and guidelines described in Section 17.3.2 of this Agreement.  It is Purchaser's policy, and Seller acknowledges and agrees, that Seller must comply with both the letter and the spirit of all such laws, rules, regulations, requirements and guidelines.  Without limiting the generality of the foregoing or the effect of any specific provision of this Agreement, Seller acknowledges and agrees to the following:

(a)    The Fair Housing Act and the Equal Credit Opportunity Act apply to all aspects of a credit transaction.  This includes, without limitation, the pricing and terms of Mortgage Loans, the level of assistance provided to applicants, and the underwriting of mortgage loans.  The Fair Housing Act and/or Equal Credit Opportunity Act prohibit discrimination on the basis of an applicant's race, color, national origin, sex, religion, marital status, age (provided the applicant has the capacity to contract), familial status, handicap, the applicant's receipt of income derived from any public assistance program, or the applicant's exercise, in good faith, of any right under the Consumer Credit Protection Act.

(b)    It is unlawful to make differing price quotations on the basis of a Mortgage Loan applicant's race, color, national origin, sex, religion, marital status, or age, or on any other prohibited basis described in Section 3.6(a) of this Agreement.

(c)    The Real Estate Settlement Procedures Act of 1974 and HUD Regulation X prohibit the payment of compensation to a mortgage broker unless the compensation is in exchange for services actually performed and goods and facilities actually furnished by the mortgage broker, and the mortgage broker's total compensation does not exceed the reasonable value of the services actually performed and the goods and facilities actually furnished by the mortgage broker.  Under this statute and regulation, Seller will be deemed to be acting as a mortgage broker, and will be subject to these provisions, when it engages in Table Funding and possibly other transactions.  For this purpose, the mortgage broker's total compensation includes any amounts paid by the Borrower and any amounts paid by the lender in the Mortgage Loan transaction.  Where Seller does act as a mortgage broker, this means that all compensation received by Seller must meet the standards set forth in these provisions of the Real Estate Settlement Procedures Act of 1974 and HUD Regulation X.

3.7.    **Financial Statements.**  Seller shall deliver to Purchaser audited financial statements of Seller (i) within 90 calendar days after the end of each fiscal year of Seller and (ii) immediately upon request by Purchaser from time to time in Purchaser's sole discretion.

8

3.8.  **Agreement of Non-Solicitation.**  Seller shall not, after the Effective Date, take any action, or permit or cause any action to be taken on Seller's behalf by any person, to solicit any Borrower to refinance any Mortgage Loan purchased by Purchaser, or take any other action which would otherwise encourage the prepayment of any Mortgage Loan, except for general solicitations of the public at large.  In addition, Seller agrees that it will not assist any person in making any solicitation of such Borrowers.

4.  **Conventional Purchase Agreement Component.**  If Purchaser issues a Purchase Agreement Component Advice to Seller for Conventional Mortgage Loans, Seller shall be eligible to sell Conventional Mortgage Loans to Purchaser, subject to the terms and conditions of this Agreement.

5.  **FHA/VA Purchase Agreement Component.**  At Purchaser's option, the Purchase Agreement Component for FHA/VA Mortgage Loans may be referred to in any Purchase Agreement Component Advice or Termination of Purchase Agreement Component Advice as the "Government Purchase Agreement Component."  If Purchaser issues a Purchase Agreement Component Advice to Seller for FHA/VA Mortgage Loans, then the following provisions shall apply.  The Purchase Agreement Component Advice shall specify whether Seller shall be eligible to sell only FHA Mortgage Loans, only VA Mortgage Loans, or both FHA Mortgage Loans and VA Mortgage Loans, to Purchaser. Seller shall comply with all provisions of this Agreement and the Manual relating to FHA/VA Mortgage Loans.  Seller shall comply with all applicable laws, rules, regulations, requirements, and guidelines that are applicable to FHA/VA Mortgage Loans including, without limitation, HUD Mortgagee Letters, HUD Handbooks, HUD Guidelines, HUD Notices, HUD Issuances, the VA Lender's Handbook, VA Loan Guarantee Releases, and VA Loan Guarantee Circulars.

6.  **Mortgage Loans Eligible for Purchase.**  A Mortgage Loan must meet the following criteria and all criteria set forth in the Manual to be eligible for purchase by Purchaser pursuant to this Agreement.

6.1.  **Eligible Property and Lien Status.**  A Mortgage Loan must be secured by a first or second priority lien Mortgage on a residential dwelling located in a state or jurisdiction in the United States approved by Purchaser, as set forth in the Manual.

6.2.  **Purchase of Loans Originated By a Party Other Than Seller.** The Mortgage Loan shall not have been originated by a person other than Seller.  For purposes of this Section 6.2, origination by a person other than Seller shall mean that any or all of the following conditions, as applicable, exist:  (a) the loan application was taken by, or (b) documents evidencing the creditworthiness of the Borrower were collected by, or (c) the appraisal of the Secured Property was obtained by, or (d) the Mortgage Loan was closed by and/or in the name of a person other than Seller.  For purposes of this Section 6.2, loan applications transferred from another lender to Seller for the convenience of the Borrower and not as part of any business arrangement between that

Rev Jan 2001

lender and Seller shall not be considered by Purchaser to be an origination by a person other than Seller.

**6.3.     Third Party Mortgage Loans Purchase Agreement Component.** If Purchaser issues a Purchase Agreement Component Advice to Seller for Third Party Mortgage Loans, then the provisions of this Section 6.3 shall apply.

**6.3.1.   General.** Notwithstanding anything in Section 6.2 of this Agreement to the contrary, but subject to Section 6.3.2 of this Agreement, Seller may offer to Purchaser, and Purchaser agrees to purchase subject to the other terms and conditions of this Agreement, Mortgage Loans owned by Seller that were originated by a Third Party (as the concept of "origination" is described in Section 6.2 of this Agreement). The Purchase Agreement Component Advice shall specify the types of Third Party Mortgage Loans that Seller shall be authorized to sell to Purchaser. The terms and conditions under which Seller shall be authorized to sell such Third Party Mortgage Loans to Purchaser shall be as set forth in the Manual. Each Mortgage Loan that is originated by a Third Party shall be treated in all respects as a Mortgage Loan originated by Seller and shall be subject to all of the provisions of this Agreement as if it were a Mortgage Loan that had been originated by Seller. Purchaser shall be entitled to exercise all rights and remedies under this Agreement against Seller with respect to Mortgage Loans originated by a Third Party without any obligation to proceed against any Third Party and regardless of the ability of Seller to proceed against any Third Party. To the extent that a Third Party acts for Seller in any manner under the Agreement, the Third Party shall be deemed to be the agent of Seller and Seller shall be responsible for all such actions of the Third Party.

**6.3.2.   Purchaser Approval of Third Parties.** The Purchase Agreement Component Advice shall advise Seller whether Seller shall be permitted to select Third Parties without Purchaser's prior approval or whether Seller shall be required to obtain prior approval of each Third Party. In either event, Seller shall provide Purchaser with such information regarding Third Parties as Purchaser requests from time to time in Purchaser's sole discretion. If Seller is permitted to select Third Parties without Purchaser's prior approval, Purchaser may at any time, and at its sole discretion, notify Seller that Seller must thereafter obtain Purchaser's prior approval of all Third Parties before Seller can sell to Purchaser any additional Mortgage Loans that were originated by Third Parties. In the event Purchaser requires Seller to obtain prior approval of Third Parties, Purchaser shall notify Seller from time to time of the names of those persons whom Purchaser has approved as Third Parties. Whether Seller is permitted to select Third Parties without Purchaser's prior approval or whether Seller is required to obtain Purchaser's prior approval of each Third Party, Purchaser has the right to disapprove any such Third Party in Purchaser's sole discretion by notice to Seller at any time. In the event Purchaser issues a notice of disapproval of any Third Party to Seller, Purchaser shall have no obligation to purchase any Mortgage Loans originated by such Third Party from the time such notice is given, including any loans in process at the time such notice is given.

10

6.4.    **Underwriting Guidelines.**

6.4.1.    **Conventional Mortgage Loans.** If Purchaser issues a Purchase Agreement Component Advice to Seller for Conventional Mortgage Loans, then each Conventional Mortgage Loan purchased by Purchaser must conform to Purchaser's underwriting guidelines as set forth in the Conventional Mortgage Loan portion of the Manual as of the date the Credit Package is received by Purchaser or by Purchaser's designated underwriter.

6.4.2.    **FHA/VA Mortgage Loans.** If Purchaser issues a Purchase Agreement Component Advice to Seller for FHA/VA Mortgage Loans, then each FHA/VA Mortgage Loan purchased by Purchaser must conform to Purchaser's underwriting guidelines as set forth in the FHA/VA Mortgage Loan portion of the Manual. Further, each FHA/VA Mortgage Loan must be in full compliance with GNMA Requirements as of the Purchase Date.

6.5.    **Resubmission of Mortgage Loans That Have Been Disapproved by Purchaser.** Seller shall not resubmit to Purchaser any Mortgage Loan that Purchaser has previously underwritten and rejected. Nothing in this Section precludes Seller from submitting to Purchaser for underwriting a Mortgage Loan that was previously submitted to Loan Prospector or DeskTop Underwriter but did not receive an approval from the same.

7.    **Terms of Lock-In.** All Lock-Ins shall be governed by the provisions of the Manual.

8.    **Approval of Conventional Mortgage Loans.** If Purchaser issues a Purchase Agreement Component Advice to Seller for Conventional Mortgage Loans, then all Conventional Mortgage Loans shall be subject to the approval of Purchaser in accordance with the provisions of the Manual.

9.    **Approval of FHA/VA Mortgage Loans.** If Purchaser issues a Purchase Agreement Component Advice to Seller for FHA/VA Mortgage Loans, then all FHA/VA Mortgage Loans shall be subject to the approval of Purchaser in accordance with the provisions of the Manual.

10.    **Closing and Sale of Mortgage Loans.**

10.1.    **Closing a Mortgage Loan.** Seller shall Close each Mortgage Loan as provided in the Manual.

10.2.    **Transmittal of Closing Package to Purchaser.** Seller shall assign and deliver the Closing Package to Purchaser as provided in the Manual.

10.3.    **Original Note.** Seller agrees to deliver the original Note, properly endorsed to the satisfaction of Purchaser, to Purchaser as provided in the Manual.

11

10.4.   **Purchase Price.**  On the Purchase Date, the Purchase Price will be remitted to Seller or Seller's warehouse lender, as applicable, net of any amounts due Purchaser in connection with such purchase, including, without limitation, underwriting fees, funding fees, and funds held in Escrow.  Any funds due Seller by Purchaser in connection with such purchase, including, without limitation, per diem interest, will be added to the Purchase Price.  Purchaser shall have the right to offset any amount owed by Seller to Purchaser against the Purchase Price or against any and all balances, credits, deposits, accounts, or monies of Seller then or thereafter held by Purchaser.

10.5.   **Transmittal of Post Closing Documents.**  Seller agrees to deliver to Purchaser the Post Closing Documents for a Mortgage Loan within 90 calendar days after the Closing of the Mortgage Loan.  If Seller can show to Purchaser's satisfaction that Seller has utilized all reasonable efforts to obtain the Post Closing Documents but is not able to deliver them within such time period, Purchaser will extend the period for delivery an additional 30 calendar days.  Delivery of the Post Closing Documents must occur no later than 120 calendar days from Closing, time being of the essence with respect to such delivery.  Purchaser reserves the right to charge late document delivery fees as described in the Manual should Post Closing Documents not be delivered by the end of the 120 calendar day period.  Seller agrees to correct any Post Closing Documents within 15 calendar days after being notified by Purchaser that any documents are unacceptable.

10.6.   **Quality Control Review.**  Purchaser shall have the right at any time to perform a quality control review of any Mortgage Loan that it purchases under this Agreement, including, without limitation, independent credit report verifications, appraisal reports, and property inspection.  If Purchaser is required by an investor to conduct or assist in a property inspection of the Secured Property, Seller agrees to assist the investor or Purchaser in conducting the inspection.

10.7.   **Servicing Rights.**  All Mortgage Loans sold to Purchaser under this Agreement shall be without reservation by Seller of any of the servicing rights for such Mortgage Loans.

10.8.   **Mortgage Loans Underwritten Using An AUS.**  All waivers of representations and warranties that attach to any Mortgage Loan by reason of the use of DeskTop Underwriter, Loan Prospector, or any other AUS shall transfer automatically to Purchaser, as more fully set forth in the Manual.  Deletions, additions to, or amendments of the requirements for Loan Prospector, DeskTop Underwriter, or any other AUS shall automatically be deemed to apply to Seller and do not require an amendment of the Manual.

10.9.   **Additional Seller Obligations.**

10.9.1. **Defense Against Requests for Repurchase.**  Seller shall defend against any request received by Purchaser for repurchase of a Mortgage Loan where the Mortgage Loan was both (a) sold by Seller to Purchaser and (b) underwritten using Delegated Underwriting authority.

12

10.9.2. **Seller Not to Make Payments for Borrowers.** Seller shall not make any payments due on a Mortgage Loan on behalf of any Borrower

10.9.3. **Seller to Provide Certain Notices.** Seller shall submit to Purchaser and maintain a current and accurate list of its senior management, and shall notify Purchaser in writing within 30 days following (a) any changes in its senior management; (b) any change in Seller's name or any name under which Seller does business; or (c) any acquisition of control of Seller (or any parent company of Seller) or any merger involving Seller (or any parent company of Seller).

10.9.4. **Notification of Disciplinary or Other Action by FHA, VA, Freddie Mac, Fannie Mae, HUD, or GNMA.** Seller shall notify Purchaser in writing within 30 days following the initiation or threat of any disciplinary action, enforcement action, lawsuit, administrative proceeding or similar action or proceeding by FHA, VA, Freddie Mac, Fannie Mae, HUD, or GNMA , or of any pending investigation by FHA, VA, Freddie Mac, Fannie Mae, HUD, or GNMA, against Seller or any of Seller's affiliated companies, or against any of the directors, officers, employees, or agents of either Seller or any of Seller's affiliated companies.

11. **Table Funding Purchase Agreement Component.** If Purchaser issues a Purchase Agreement Component Advice to Seller for Table Funding, then Purchaser shall Table Fund Mortgage Loans in accordance with the terms and conditions set forth in the Manual. All Mortgage Loans that are Table Funded shall be Closed as set forth in the Manual.

12. **Early Prepayments.** This Section 12 shall apply to each Mortgage Loan purchased by Purchaser from Seller.

12.1. **Prepayments Within 90 Days of Purchase Date.** If the Mortgage Loan is paid in full at any time within the first 90 calendar days following the Purchase Date, then Seller shall refund to Purchaser the full amount of any portion of the Purchase Price that represents the servicing value (as identified by Purchaser in the purchase advice for the Mortgage Loan) and any portion of the Purchase Price which is above par.

12.2. ~~**Prepayments Within 91-180 Days of Purchase Date.** If the Mortgage Loan is paid in full at any time within 91 to 180 calendar days following the Purchase Date, then Seller shall refund to Purchaser the full amount of any portion of the Purchase Price that represents the servicing value (as identified by Purchaser in the purchase advice for the Mortgage Loan).~~

12.3. **Payment of Refunds.** Purchaser shall promptly notify Seller of each prepayment subject to Section 12.1 or Section 12.2 of this Agreement, and shall present an invoice for the amount due. Seller shall pay the amount of such invoice within 15 days of the date thereof. Purchaser reserves the right to offset any amounts due hereunder at any time, without prior notice, against the Purchase Price for any Mortgage

Rev Jan 2001

Loan or against any and all balances, credits, deposits, or monies of Seller then or thereafter held by Purchaser.

13. **Delegated Underwriting Purchase Agreement Component**. If Purchaser issues a Purchase Agreement Component Advice to Seller for Delegated Underwriting, then this Section 13 shall apply.

13.1. **Level of Delegated Underwriting Authority**. At its sole discretion, Purchaser shall from time to time establish Seller's level of Delegated Underwriting authority. Purchaser shall provide Seller with prior notice of any change in Seller's Delegated Underwriting authority.

13.2. **Termination of Delegated Underwriting**. Purchaser may terminate Seller's authorization to perform Delegated Underwriting at any time by providing a Notice of Termination of Purchase Agreement Component Advice to Seller relating to such authorization; provided, however, that a Lock-In for any Mortgage Loan with Delegated Underwriting that Purchaser issued prior to the effective date of the termination will be honored, subject to the remaining provisions of this Agreement.

13.3. **Changes to Delegated Underwriting Requirements**. Delegated Underwriting authority shall be subject to the provisions of the Manual, and such provisions may be amended or modified as provided in Section 3.4 of this Agreement. Deletions, additions to, or amendments of the requirements for Loan Prospector or DeskTop Underwriter shall automatically be deemed to apply to Seller and do not require an amendment or modification of the Manual.

14. **Sponsored Mortgagee - FHA Purchase Agreement Component**. If Purchaser issues a Purchase Agreement Component Advice to Seller for a Sponsored Mortgagee - FHA, then this Section 14 shall apply.

14.1. **Scope of Section**. This Section 14 applies only with respect to FHA Mortgage Loans.

14.2. **Sponsorship of Seller**. Purchaser shall sponsor Seller as a FHA Loan Correspondent. Seller shall comply in all respects with all lending requirements of FHA and all requirements of FHA pertaining to or governing FHA loan correspondents.

14.3. **Termination of Sponsorship**. Purchaser may terminate Seller's status as a FHA Loan Correspondent at any time by providing a Termination of Purchase Agreement Component Advice to Seller relating to such status. Seller may terminate Seller's status as a FHA Loan Correspondent at any time by giving notice of such termination to Purchaser.

15. **Sponsored Mortgagee - VA Purchase Agreement Component**. If Purchaser issues a Purchase Agreement Component Advice to Seller for a Sponsored Mortgagee - VA, then this Section 15 shall apply.

14

15.1. **Scope of Section.** This Section 15 applies only with respect to VA Mortgage Loans.

15.2. **Sponsorship of Seller.** Purchaser shall sponsor Seller as a VA Agent. Seller shall comply in all respects with all lending requirements of VA and all requirements of VA pertaining to or governing VA agents.

15.3. **Termination of Sponsorship.** Purchaser may terminate Seller's status as a VA Agent at any time by providing a Termination of Purchase Agreement Component Advice to Seller relating to such status. Seller may terminate Seller's status as a VA Agent at any time by giving notice of such termination to Purchaser.

16. **Sponsored Mortgagee - AUS Purchase Agreement Component.** If Purchaser issues a Purchase Agreement Component Advice to Seller for a Sponsored Mortgagee - AUS, then this Section 16 shall apply.

16.1. **Scope of Section.** This Section 16 applies only with respect to AUS Mortgage Loans.

16.2. **Sponsorship of Seller.** Purchaser shall sponsor Seller as an AUS loan originator. Seller shall comply in all respects with all lending requirements of the AUS and all requirements of the AUS pertaining to or governing such AUS loan originators.

16.3. **Termination of Seller's Authority to Utilize an AUS.** Purchaser may terminate Seller's authority to utilize any AUS at any time by providing a Termination of Purchase Agreement Component Advice to Seller relating to such authority.

17. **Representations and Warranties With Respect to Mortgage Loans.** In order to induce Purchaser to purchase the Mortgage Loans, Seller represents and warrants to Purchaser as of the Purchase Date as to each Mortgage Loan sold to Purchaser pursuant to this Agreement as follows.

17.1. **Validity of Obligation.** The Mortgage Loan documents have been duly executed by the Borrower and are valid and genuine and binding obligations of the Borrower. The Note is a valid and genuine, binding and enforceable negotiable instrument and is not subject to any claims, defenses, setoffs or counterclaims. The Mortgage is valid and genuine, binding and enforceable and creates a lien of the priority agreed upon with Purchaser on the Secured Property, subject only to (a) liens for real estate taxes not yet due and payable, (b) special assessments not yet due and payable, or (c) covenants, conditions, easements or rights-of-way acceptable to Purchaser and satisfactory (i) under Freddie Mac/Fannie Mae Requirements or investor specific requirements, if the Mortgage Loan is a Conventional Mortgage Loan, or (ii) under GNMA Requirements, if the Mortgage Loan is a FHA/VA Mortgage Loan. The Mortgage is properly recorded in the land records of the appropriate jurisdiction, and no portion of the lien has been released or subordinated.

15

17.2.   **Ownership and Transfer.**  Seller is the sole owner of the Mortgage Loan and has the authority to sell, transfer and assign the same on the terms set forth in this Agreement.  The Mortgage Loan is free and clear of any and all assignments, encumbrances, options, rights, claims, liens and security interests.  Seller has the right to sell and assign each Mortgage Loan to Purchaser without the consent, approval or agreement of any other person, and Seller has not assigned any interest in the Mortgage Loan to any other person.  By delivery and endorsement of the Note to Purchaser, Purchaser shall be the sole owner of the Note.

17.3.   **Eligibility.**

17.3.1.   **Eligibility of Conventional Mortgage Loans.**  Each Conventional Mortgage Loan is in full compliance with this Agreement and the Manual including, without limitation, all underwriting and credit requirements.

17.3.2.   **Eligibility of FHA/VA Mortgage Loans.**  Each FHA/VA Mortgage Loan is in compliance with this Agreement; the Manual; GNMA Requirements; and all applicable laws, rules, regulations, requirements, and guidelines that are applicable to FHA/VA Mortgage Loans including, without limitation, HUD Mortgagee Letters, HUD Handbooks, HUD Guidelines, HUD Notices, HUD Issuances, the VA Lender's Handbook, VA Loan Guarantee Releases, and VA Loan Guarantee Circulars.

17.4.   **Compliance with Applicable Law.**  Seller has complied with all applicable federal, state and local laws, rules and regulations with respect to the Mortgage Loan, including, but not limited to, the Real Estate Settlement Procedures Act of 1974, the Equal Credit Opportunity Act, the Truth-In-Lending Act, the Fair Credit Reporting Act, the Home Mortgage Disclosure Act of 1975, the Fair Housing Act, the Homeowners Protection Act of 1998, the National Flood Insurance Act of 1968, the Flood Disaster Protection Act of 1973, and Title V of the Gramm-Leach-Bliley Act, all as amended, together with the rules and regulations promulgated thereunder, and all applicable usury limitations.  Further, all Consumer Disclosures relating to the Mortgage Loan have been properly given on a timely basis in compliance with all applicable laws, rules and regulations.

17.5.   **Title Insurance.**  There is no exception to or condition affecting the title to the Secured Property other than usual and customary exceptions satisfactory to Purchaser which do not adversely affect title to, or the marketability of, the Secured Property.  There is in force a paid-in-full mortgagee title insurance policy with respect to the Secured Property issued by a title insurance company acceptable to Purchaser on standard ALTA mortgagee policy forms in an amount satisfactory to Purchaser and containing all endorsements required by Purchaser or the Manual.  By assignment or endorsement of Seller's interest in the Mortgage Loan, Purchaser, its successors and assigns, is designated as a mortgagee and additional named insured with regard to the title insurance.  Seller has not done, by act or omission, anything which would impair such title insurance coverage.

Rev Jan 2001

17.6.   **Secured Property Intact.**  The Secured Property has not been damaged so as to adversely and materially affect its value and is otherwise in good repair. There are no proceedings pending for the partial or total condemnation of the Secured Property.  The Secured Property and the surrounding area are not located in an area that has been designated a disaster-affected area by the Federal Emergency Management Agency.

17.7.   **Hazard and Casualty Insurance.**  There is in force for the Mortgage Loan adequate hazard and casualty insurance coverage with respect to the Secured Property in an amount and pursuant to a policy of insurance satisfactory to Purchaser insuring against fire or other casualties required by Purchaser or the Manual, and, if required by federal law, flood insurance.  By assignment or endorsement of Seller's interest, Purchaser, its successors and assigns, is designated as a mortgagee and additional named insured with regard to such insurance.

17.8.   **Delinquent Status.**  As of the Purchase Date, the Mortgage Loan is not 16 calendar days or more Delinquent, and Seller has no knowledge of any default or breach existing or threatened under the Mortgage or Note.

17.9.   **Modification of Mortgage Loan Documentation.**  The terms of the Mortgage Loan have in no way been changed or modified (except that if the Mortgage Loan is made under Purchaser's construction loan modification program, such documents have not been changed or modified other than as approved by Purchaser to participate in such program) and the lien of the Mortgage has not been released or subordinated.  All Mortgage Loan documentation submitted to Purchaser is genuine, complete and accurate, and all representations as to each Mortgage Loan are true and correct and meet the requirements and specifications of this Agreement and the Manual.

17.10.  **Taxes.**  All taxes due and payable on or prior to the Purchase date with respect to the Secured Property have been paid in full.

17.11.  **Acceptable Investment.**  There are no circumstances or conditions with respect to the Mortgage Loan, the Secured Property, the Borrower, or the Borrower's credit standing that can reasonably be expected to:  (a) cause private institutional investors to regard the Mortgage Loan as an unacceptable investment; or (b) cause the Mortgage Loan to become Delinquent; or (c) adversely affect the Mortgage Loan's value or marketability.

17.12.  **Assignment.**  A valid and recordable instrument of assignment of all right, title and interest in and to the Mortgage has been duly executed and delivered by the proper person(s) or entity(ies) to Purchaser, such instrument has been duly recorded, and such assignment is not subject to any other assignment, claim, lien, mortgage, pledge, charge, security interest or encumbrance.

17.13.  **Qualification of Appraiser.**  All appraisers performing and furnishing appraisals with respect to the Mortgage Loan meet the qualifications set forth in the Manual.

17

17.14. **GNMA Representations and Warranties**. If the Mortgage Loan is a FHA/VA Mortgage Loan, Seller hereby makes to Purchaser the representations and warranties contained in the GNMA Requirements with respect to each such FHA/VA Mortgage Loan.

17.15. **FHA Approval or VA Approval**. In the case of a FHA Mortgage Loan, there is a FHA Approval in effect for such FHA Mortgage Loan, all conditions of the FHA Approval have been met, and the one-time mortgage insurance premium required by FHA, if applicable, has been paid, as evidenced by a mortgage insurance certificate issued by HUD. In the case of a VA Mortgage Loan, there is a VA Approval in effect for such VA Mortgage Loan, all conditions of the VA Approval have been met, and the funding fee required by VA, if applicable, has been paid in full, as evidenced by a loan guaranty certificate issued by VA.

17.16. **Soldier's and Sailor's Civil Relief Act**. Borrower has not notified Seller, and Seller has no knowledge of any relief requested or allowed to Borrower, under the Soldier's and Sailor's Civil Relief Act of 1940.

17.17. **Environmental Issues**. There are no past or current violations of any federal, state or local environmental or toxic waste laws, rules or regulations with respect to the Secured Property, and no past or current actions, suits or proceedings with respect to the same. In addition, there is no Hazardous or Petroleum Substance at or under the Secured Property, including but not limited to the soil and groundwater, no present or past owner, operator or any other person or entity has used, generated, manufactured, stored, discharged, disposed or released any Hazardous or Petroleum Substance in, at, on, under or in the vicinity of the Secured Property, or transported any Hazardous or Petroleum Substance to or from the Secured Property. For purposes of this Section, the term "Hazardous or Petroleum Substance" shall include but not be limited to any chemical, material or matter of any kind or form that is classified as a hazardous substance by any federal, state or local law, including but not limited to the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. § 9601 et seq., and any petroleum product or distillate, whether pure product or waste, including but not limited to gasoline, oil, grease, lubricants and fuel.

17.18. **Inapplicability of the Home Ownership and Equity Protection Act of 1994**. The Mortgage Loan is not subject to the Home Ownership and Equity Protection Act of 1994 or the rules and regulations promulgated thereunder.

17.19. **Inapplicability of State and Local Predatory Lending Laws**. The Mortgage Loan is not subject to any state or local law, rule, regulation, or ordinance that governs, addresses, regulates or prohibits predatory lending, high cost home loans, high rate home loans, high fee home loans, or similar matters.

18.     **Other Representations and Warranties**. Seller represents and warrants to Purchaser as of the date of this Agreement, and as of each Purchase Date, as follows:

18

18.1.   **Qualification of Seller.**  Seller is an entity of the type described in the first paragraph of this Agreement and has been duly organized and is validly existing and in good standing under the laws of the jurisdiction of its organization.  Seller is duly and validly qualified and authorized to do business and to originate, purchase, hold and sell Mortgage Loans in each jurisdiction where it conducts its business.  Seller has the requisite power and authority to own and operate its properties and has all licenses, certificates and permits required to engage in such transactions in each jurisdiction where it does business.

18.2.   **Due Execution and Delivery.**  The execution and delivery of this Agreement are within the corporate or organizational powers of Seller and have been duly and validly authorized by all necessary action on the part of Seller, and neither the execution and delivery of this Agreement by Seller, nor the consummation by Seller of the transactions herein contemplated, nor compliance with the provisions hereof by Seller will (a) conflict with or result in a breach of, or constitute a default under, any of the provisions of the articles of incorporation or organization or bylaws of Seller or any law, rule or regulation, or any judgment, decree, or order binding on Seller, or any of its properties, or any of the provisions of any indenture, mortgage, deed of trust, contract or other instrument to which it is a party or by which it is bound or (b) result in the creation or imposition of any lien, charge, or encumbrance upon any of its properties pursuant to the terms of any such indenture, mortgage, deed of trust, contract or other instrument.

18.3.   **Binding Agreement.**  This Agreement has been duly executed and delivered by Seller and constitutes a legal, valid and binding agreement of Seller, enforceable in accordance with its terms, subject, as to enforcement of remedies, to applicable bankruptcy, reorganization, insolvency, or other similar laws affecting creditor's rights generally from time to time in effect, and to general principles of equity.

18.4.   **No Government Consent.**  No governmental consent or approval is required with respect to Seller's execution, delivery or performance of this Agreement.

18.5.   **Litigation.**  There is no action, suit, proceeding or government investigation pending, or, to the knowledge of Seller, threatened against Seller which, if adversely determined, would adversely affect Seller's business or its performance under this Agreement.

18.6.   **Financial Condition.**  All financial statements provided by Seller to Purchaser have been prepared in accordance with generally accepted accounting principals and reflect Seller's financial condition as of the date thereof.  There have been no material adverse changes in Seller's financial condition since that date.

18.7.   **Insurance Coverage.**  Seller has in place such errors and omissions, fidelity bond and general liability insurance policies, providing coverage in such amounts, as may be required from time to time by Purchaser in its sole discretion.

18.8.   **Internet Access.**  Seller has full access to the Internet.  There is nothing that may prevent Seller from readily accessing the Manual, or notices,

Rev Jan 2001

memoranda, bulletins, or other information related to the Manual, from Purchaser's designated Internet web site as contemplated by Section 3.4 of this Agreement.

19.  **Survival of Representations and Warranties**. All representations and warranties contained in this Agreement shall survive the Purchase Date for a period of 5 years (notwithstanding any earlier termination of this Agreement). All representations and warranties contained in this Agreement shall inure to the benefit of Purchaser, its successors, affiliates and assignees, regardless of any review or investigation made by or on behalf of Purchaser.

20.  **Repurchase Requirements**. In addition to any other rights and remedies which Purchaser may have against Seller, Seller agrees to repurchase any Mortgage Loan (or, if the Mortgage Loan has been foreclosed upon, to purchase the Secured Property if it is still held by Purchaser) within 10 calendar days after Purchaser's demand, resulting from the occurrence any of the events specified in Section 20.1.

20.1.  **Events Resulting in Repurchase Obligation**. Seller's repurchase obligations under this Section 20 shall result from the occurrence of any of the following events with respect to a Mortgage Loan:

20.1.1. **Breach of Warranty or Representation**. Seller breaches any representation or warranty made pursuant to this Agreement, provided that Seller shall have 15 calendar days following notice thereof from the Lender to cure any breach resulting from a clerical error to the satisfaction of Purchaser. Such right to cure may be exercised only one time for each Mortgage Loan sold to Purchaser under this Agreement.

20.1.2. **Timely Delivery of Post Closing Documents**. The Post Closing Documents or any other documentation or corrections of any documentation have not been delivered within the time periods set forth in this Agreement.

20.1.3. **False or Misleading Statements**. Any information submitted by Seller or any statement, report or document furnished by Seller to Purchaser hereunder was incomplete, inaccurate, false, or misleading in any material respect when made or delivered, regardless of whether Seller had or should have had knowledge of the same at the time. This includes, without limitation, any information in any loan application submitted by any Borrower; any appraisal or evaluation report; any credit report; any title search or title insurance policy; and any condominium or PUD warranties made by Seller to Purchaser.

20.1.4. **Early Payment Delinquency**. The Mortgage Loan payment due on the first payment due date after the Purchase Date is Delinquent.

20.1.5. **Ninety (90) Days' Delinquency Within 9 Months**. The Mortgage Loan becomes 90 days Delinquent within the first 9 months following the Purchase Date; provided, that this Section 20.1.5 shall not apply to a Mortgage Loan that was underwritten by Purchaser.

Rev Jan 2001

**20.1.6. Failure to Obtain Certain Certificates.** If, within the time period required by the Manual, (a) Seller fails to obtain private mortgage insurance for a Mortgage Loan, where such private mortgage insurance is required by the Lock-In, the loan underwriting approval commitment, or the Manual, or (b) in the case of a Mortgage Loan which is required to have FHA insurance, Seller fails to obtain a FHA mortgage insurance certificate, or (c) in the case of a Mortgage Loan which is required to have a VA guarantee, Seller fails to obtain a VA loan guarantee certificate.

**20.1.7. Request by Purchasing Party.** Any party to whom Purchaser sells a Mortgage Loan requests Purchaser to repurchase the Mortgage Loan and Seller is unable to provide a defense which persuades such party to withdraw the repurchase request.

**20.1.8. Unmarketability.** The Mortgage Loan is unmarketable by Purchaser for any reason, including, without limitation, material errors regarding data validation.

**20.2. Survival of Repurchase Obligation.** Seller's repurchase obligation under this Section 20 shall survive (a) any transfer or grant of any interest in or sale of the Mortgage Loan by Purchaser or its affiliates or any of their successors or assigns and (b) any termination of this Agreement, and (c) any issuance of a Termination of Purchase Agreement Component Advice for Delegated Underwriting. Seller's obligation to repurchase Mortgage Loans under this Section 20 shall be in addition to, and not in replacement of, Seller's obligation to repurchase Mortgage Loans under any other applicable law.

**20.3. Repurchase Price.** In the event Seller is obligated to repurchase a Mortgage Loan under this Section 20, the repurchase price shall be the higher of (a) the unpaid principal balance or (b) the price paid by Purchaser (but not less than par), plus all accrued interest through and including the date of repurchase, together with reimbursement to Purchaser for any expenses or court costs incurred in connection with the repurchase of any such Mortgage Loan or investigating, researching and enforcing such repurchase including, without limitation, attorney's fees or other professional fees. Purchaser shall have the right to offset the amount owed by Seller to Purchaser pursuant to this Section 20 at any time, without prior notice, against the Purchase Price for any Mortgage Loan or against any and all balances, credits, deposits, accounts, or monies of Seller then or thereafter held by Purchaser.

**21. Events of Default; Termination.** Purchaser, at its sole option, shall have the right to immediately terminate this Agreement without prior notice should an Event of Default occur. In the event this Agreement is terminated under this Section 21, Purchaser shall not be obligated to purchase any additional Mortgage Loans (regardless of whether the Mortgage Loans are subject to commitments or Lock-Ins from Purchaser) from Seller under this Agreement from and after the effective date of the termination. After any termination under this Section 21, the provisions of this Agreement shall continue to apply to any Mortgage Loans previously purchased by Purchaser from Seller. Certain provisions of this Agreement, as specified in certain sections of this Agreement, shall

21

survive any termination of this Agreement. The following shall be Events of Default under this Agreement:

21.1. **Repeated Breaches of Representations or Warranties.** Purchaser determines that Seller has regularly breached any of the warranties or representations contained in this Agreement, regardless of any action by Seller to cure breaches.

21.2. **Failure to Deliver Certain Documents.** Purchaser determines that Seller has failed to deliver to Purchaser any Closing Documents or Post Closing Documents within the time periods required by the Manual or this Agreement.

21.3. **False or Misleading Statements.** Purchaser determines that any information submitted by Seller or any statement, report or document furnished by Seller to Purchaser hereunder was incomplete, inaccurate, false, or misleading in any material respect when made or delivered, regardless of whether Seller had or should have had knowledge of the same at the time. This includes, without limitation, any information in any loan application submitted by any Borrower; any appraisal or evaluation report; any credit report; any title search or title insurance policy; and any condominium or PUD warranties made by Seller to Purchaser.

21.4. **Failure to Close and Deliver Certain Mortgage Loans.** Failure by Seller to use its best efforts to close and deliver a Mortgage Loan subject to a "best efforts" Lock-In to Purchaser for purchase pursuant to the terms of this Agreement.

21.5. **Insolvency.** Seller (a) shall wind up or dissolve its operations or be wound up or dissolved or take corporate action in contemplation of such winding up or dissolution of its operations; or (b) shall no longer be Solvent or a petition under the Bankruptcy Code or similar law shall be filed by Seller; or (c) an involuntary petition under the Bankruptcy Code or similar law shall be filed against Seller and such petition shall not be dismissed within 10 calendar days.

21.6. **Failure to Comply With Terms or Conditions.** Any other failure to comply with any term or condition of this Agreement or the Manual.

22. **Indemnity.** Seller hereby agrees to indemnify, defend and hold harmless Purchaser and its successors, affiliates, and assigns, together with their respective officers, directors, employees and agents (collectively, the "Indemnitees"), from and against any and all claims, losses, damages, fines, penalties, forfeitures, attorney's fees, judgments and any costs, court costs, fees and expenses relating to, arising out of, based upon, or resulting from (a) a breach by Seller of any representation, warranty, term, condition or obligation contained in or made pursuant to the Manual, this Agreement or any other agreement between Seller and Purchaser relating to the purchase of Mortgage Loans, (b) a failure by Seller to disclose any information that renders any such representation or warranty misleading or inaccurate, (c) any materially inaccurate, incomplete, false, or misleading information provided by or through Seller to Purchaser, (d) any misrepresentation made by or through Seller to Purchaser concerning any

22

Mortgage Loan, or (e) Seller's ownership of or actions with respect to any Mortgage Loan. This Section 22 shall survive any purchase, sale or transfer of any Mortgage Loan or any interest therein by any of the Indemnitees, the liquidation of the Mortgage Loan, or any termination of this Agreement.

23.   **Relationship of Parties.** Neither party shall be deemed an agent, employee or legal representative of the other party. Each party is acting solely on its own behalf and as an independent contractor. Neither party to this Agreement shall have the power or authority to represent, act for, bind or commit the other party in connection with any action taken pursuant to this Agreement. Neither the execution nor the performance of this Agreement shall be construed to establish any partnership or joint venture between the parties.

24.   **Notices.** Except as provided in Section 3.4 of this Agreement, all notices, requests, demands, consents, approvals, agreements, or other communications under this Agreement (collectively, "Communications") required or permitted to be given hereunder shall be in writing. A Communication shall be sufficient if it is personally delivered or sent by facsimile transmission, recognized carrier of overnight mail (postage prepaid), or registered or certified U.S. Mail (postage prepaid, return receipt requested). A Communication given by personal delivery shall be deemed to be given when actually delivered. A Communication by facsimile transmission shall be deemed to be given when sent (if confirmation of transmission is received by the party transmitting the facsimile). A Communication by recognized carrier of overnight mail shall be deemed to be given 2 Business Days after the date of delivery to the recognized carrier of overnight mail. A Communication by registered or certified U.S. Mail shall be deemed to be given 3 Business Days after the date of deposit in the U.S. Mail. All Communications shall be given to the parties at their respective addresses or facsimile numbers indicated below:

|                      |                                             |
|----------------------|---------------------------------------------|
| If to Purchaser:     | SunTrust Mortgage, Inc.                     |
|                      | 901 Semmes Avenue                           |
|                      | Richmond, Virginia 23224                    |
|                      | Attention: Correspondent Lending Department |
|                      | Fax No. 804-291-0529                        |

If to Seller:            _____

                         _____

                         _____

                         Attention: _____

                         Telephone No. _____

                         Fax No. _____

Either party may change the recipient address or facsimile number to which Communications shall be sent by giving written notice of such change to the other party

23

in the manner provided in this Section 24; provided, however, that such notice shall be effective only upon actual receipt.

25. **Term and Termination of Agreement.** This Agreement may be terminated by either party at any time without cause by giving 15 calendar days notice to the other party. Upon such notification, Purchaser shall cease accepting Mortgage Loans for credit approval as of the effective date of termination, but shall purchase pursuant to the terms of this Agreement any Mortgage Loans for which a Lock-In is in effect as of the termination date. After any termination under this Section 25, the provisions of this Agreement shall continue to apply to any Mortgage Loans previously purchased by Purchaser from Seller. Certain provisions of this Agreement, as specified in certain Sections of this Agreement, shall survive any termination of this Agreement. Nothing in this Section 25 shall affect or apply to a termination under Section 21 of this Agreement.

26. **Binding Agreement; Successors and Assignees; Assignment.** This Agreement is binding upon the Seller and Purchaser and their respective successors and assigns. This Agreement, and Seller's duties, obligations or rights under this Agreement, may not be assigned by Seller without the prior written consent of Purchaser. Purchaser shall have the right to assign this Agreement, or any of its duties, obligations, or rights under this Agreement, to any affiliate of Purchaser or to any successor holder of any Mortgage Loan.

27. **Entire Agreement.** This Agreement and the Manual constitute the entire agreement and understanding of the parties with respect to the subject matter of this Agreement. Except as provided in Section 3.3.4, Section 3.4, or elsewhere in this Agreement, no modification or amendment of this Agreement shall be valid unless set forth in writing and executed by both Seller and Purchaser.

28. **No Waiver; Rights and Remedies Cumulative.** No failure or delay on the part of either party in exercising any of its rights, powers, privileges or remedies hereunder shall operate as a waiver thereof, nor shall a single or partial exercise thereof preclude any other future exercise or the exercise of any other rights, powers, privileges or remedies, all of which shall be cumulative.

29. **Captions.** The captions of the various sections and subsections of this Agreement have been inserted only for purposes of convenience. Such captions are not part of this Agreement and shall not be deemed in any manner to modify, interpret, explain, enlarge or restrict any provisions of this Agreement.

30. **Governing Law.** This Agreement is to be construed in accordance with and governed by the internal laws of the Commonwealth of Virginia without giving effect to any choice of law rule that would cause the application of the laws of any jurisdiction other than the internal laws of the Commonwealth of Virginia to the rights and duties of the parties.

31. **Valid Agreement.** This Agreement is not valid until signed by both Seller and Purchaser.

24

32.    **Construction.** Words used in this Agreement in the singular shall include the plural where the context so permits, and vice versa. The masculine tense shall include the female and neutral tenses. The word "including" shall mean including without limitation.

33.    **Confidentiality.**

33.1.    **Non-Disclosure.** Seller shall not disclose any Confidential Information to any person other than with the prior written consent of Purchaser except pursuant to a subpoena or order issued by a court of competent jurisdiction or administrative or legislative body.

33.2.    **Receipt of Subpoena or Order.** If Seller receives such a subpoena or order requesting it to disclose any Confidential Information, Seller shall (a) notify Purchaser in writing within 5 Business Days following its receipt of the subpoena or order and (b) reasonably cooperate with Purchaser in taking steps to resist or narrow the request for Confidential Information or to obtain assurances that the confidentiality of the Confidential Information shall be maintained to the extent feasible.

34.    **Severability.** If any provision of this Agreement, or the application of this Agreement to any person, place or circumstance, shall be held by a court of competent jurisdiction to be invalid, unenforceable or void, the remainder of this Agreement and such provisions as applied to other persons, places, and circumstances shall remain in full force and effect.

35.    **Expenses.** Whether or not the transactions contemplated by this Agreement are consummated, each party shall pay all expenses incurred by it or on its behalf in connection with this Agreement and the transactions contemplated hereby, except as otherwise set forth in this Agreement.

36.    **Further Assurances; Power of Attorney.**

36.1.    **Further Assurances.** Subject to the terms and conditions of this Agreement and the Manual, each party agrees to use its best efforts to do, or cause to be done, all things necessary, proper or advisable under applicable laws, rules and regulations to consummate the transactions contemplated by this Agreement as expeditiously as practicable including, without limitation, the performance of such further acts or the execution and delivery of any additional instruments or documents as either party may reasonably request in order to carry out the purposes of this Agreement and the Manual and the transactions contemplated thereby.

36.2.    **Power of Attorney.** With respect to each Mortgage Loan sold by Seller to Purchaser under this Agreement, Seller hereby constitutes and appoints Purchaser its true and lawful Attorney-In-Fact, and in its name, place and stead and for its use and benefit hereby authorizes such Attorney-In-Fact, through any of its duly appointed officers, from time to time to execute and/or acknowledge in writing, or by facsimile, or otherwise, all documentation reasonably necessary and appropriate for any one or more of the following: (a) the substitution of any trustee in any Mortgage, (b) the

Rev Jan 2001

assignment of any Mortgage in the name of Seller to Purchaser, and the recordation of any such Mortgage or assignment (c) the endorsement of any checks, drafts, or other payment instruments made payable to Seller with respect to any such Mortgage Loan, (d) the modification, amendment, or correction of any Note, Mortgage, Closing Package document, or Post-Closing Document relating to any such Mortgage Loan, and (e) the preparation, execution and/or delivery of such other documentation in the name of Seller as Purchase shall determine to be reasonably necessary and appropriate to carry out the transactions contemplated by this Agreement and/or the subsequent sale of any such Mortgage Loan by Purchaser. Seller gives and grants to such Attorney-In-Fact full power and authority to do and perform each and all of the foregoing acts, as fully as Seller might or could do so on its own behalf. The power of attorney contained in this Section 36.2 is coupled with an interest, is irrevocable, and shall survive any termination of this Agreement. Upon the request of Purchaser, Seller shall execute and acknowledge such additional powers of attorney as may be reasonably necessary to enable Purchaser, as such Attorney-In-Fact, to perform any of the actions described in this Section 36.2.

37.     **Time is of the Essence.** Time is of the essence in respect to all provisions of this Agreement or the Manual in which a definite time for performance is specified, provided, however, that this Section 37 shall not be construed to limit or deprive a party of the benefit of any grace or use period provided for in this Agreement or the Manual.

38.     **Failure or Delay in Performance.** Neither party shall be liable for failure or delay in performing its obligations under this Agreement if such failure or delay is due to circumstances beyond the party's reasonable control including, without limitation, acts of any governmental body, war, insurrection, sabotage, embargo, fire, flood, strike or other labor disturbance, interruption of or delay in transportation; provided, however, that lack of credit or funds for financing shall not in any event be considered a matter beyond the reasonable control of the party. Each party (a) shall promptly notify the other in writing of any such delay or failure in performance, the expected duration thereof, and its anticipated effect on the party expected to perform and (b) shall use its best efforts to remedy such delay, except that neither party shall be under any obligation to settle a labor dispute.

39.     **Drafting.** This Agreement has been negotiated at arms length and between persons sophisticated and knowledgeable in the matters dealt with in this Agreement. In addition, each party has had the opportunity to be represented by legal counsel in connection with the negotiation of this Agreement. Accordingly, any rule of law or legal decision that would require interpretation of any ambiguities in this Agreement against the party that has drafted it is not applicable and is waived to the fullest extent allowed by law. The provisions of this Agreement shall be interpreted in a reasonable manner to effect the purpose of the parties and this Agreement.

40.     **Choice of Forum.** Seller (a) submits to personal jurisdiction in the Commonwealth of Virginia, the courts thereof and the United States District Courts sitting therein, for the enforcement of this Agreement, (b) waives any and all rights under the law of any jurisdiction to object on any basis (including, without limitation, inconvenience of forum) to jurisdiction or venue within the Commonwealth of Virginia

for the purpose of litigation to enforce this Agreement, and (c) agrees that service of process may be made upon the Seller in any manner prescribed by applicable federal rules of civil procedure for the giving of notice to the Seller.  Any legal proceeding brought against either of the parties hereto with respect to this Agreement shall be brought in the Circuit Court of Henrico County, Virginia, or in the United States District Court for the Eastern District of Virginia, Richmond Division, irrespective of where such party may be located at the time of such proceeding.

     41.    **Waiver of Jury Trial.  EACH PARTY TO THIS AGREEMENT WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, THE RIGHT TO TRIAL BY JURY IN ANY LEGAL PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED BY THIS AGREEMENT.**

     42.    **Counterparts.**  This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which taken together shall constitute one and the same instrument.

     IN WITNESS WHEREOF, each party has caused this Agreement to be executed by its duly authorized officer, all as of the Effective Date.

**SunTrust Mortgage, Inc. ("Purchaser")**                  **("Seller")**

By: _____     By: _____

Title: _____     Title: _____

*Changes TKN 12-10-01*

## **Exhibit A**

This is Exhibit A to that certain Correspondent Loan Purchase Agreement (the "Agreement") made and entered into effective as of <u>December 7</u>, 20 <u>01</u> by and between SunTrust Mortgage, Inc. and <u>Najarian Loans, Inc.</u> . All terms used in this Exhibit A that are not defined shall be defined as set forth in the Agreement.

As of the Effective Date, the following Purchase Agreement Components have been issued by Purchaser to Seller:

<u>Conventional Purchase</u>

Government Purchase FHA/VA

Sponsorship – FHA

Sponsorship – VA

Sponsorship AUS

A-1